**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| GINGER ROBERTSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHITESTONE HOME FURNISHINGS, LLC d/b/a Saatva<br><br>Defendant. | Civil Action No.: 6:23-cv-03184 |

<u>**OPPOSING SUGGESTIONS TO DEFENDANT'S MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.     THE MISSOURI TAX REFUND PROCEDURE IS NEITHER APPLICABLE
TO THE PRESENT FACTS NOR AN EXCLUSIVE REMEDY .................................... 1

II.    THE FAC ADEQUATELY STATES A CLAIM UNDER THE MMPA.......................... 4

    A.     Defendant Committed An Unlawful Practice In Connection With
The Sale Of Merchandise.......................................................................... 4

    B.     Plaintiff Adequately Alleges That Defendant's Illegal Conduct
Would Mislead A Reasonable Consumer .................................................. 5

    C.     Plaintiff And Class Members Suffered An Ascertainable Loss Of
Money ....................................................................................................... 8

III.    THE FAC ADEQUATELY STATES A CLAIM UNDER GBL § 349............................. 9

    A.     The Alleged Deception Occurred in New York ........................................ 9

    B.     Overcharges Related To Retail Purchases Is Consumer-Oriented
Conduct ................................................................................................... 10

    C.     Overcharging Consumers Is A Deceptive Practice.................................. 11

    D.     The Voluntary Payments Doctrine Does Not Apply ............................... 12

IV.   PLAINTIFF'S EQUITABLE CLAIMS DO NOT FAIL AS A MATTER OF
LAW ....................................................................................................................... 12

V.     PLAINTIFF ADEQUATELY STATES A CLAIM FOR NEGLIGENCE ....................... 14

# TABLE OF AUTHORITIES

**CASES**

*Ackerman Buick, Inc. v. St. Louis Cnty.*,
 771 S.W.2d 343 (Mo. 1989) ................................................................................... 3

*Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*,
 332 S.W. 3d 184 (Mo. Ct. App. 2010) ................................................................. 15

*B.L. Jet Sales, Inc. v. Alton Packaging Corp.*,
 724 S.W. 2d 669 (Mo. App. 1987) ....................................................................... 15

*B & D Inv. Co. v. Schneider*,
 646 S.W.2d 757 (Mo. 1983) ................................................................................... 3

*Bell v. Annie's, Inc.*,
 2023 WL 3568623 (E.D. Mo. May 18, 2023) ....................................................... 6

*Blass v. Rite Aid of Connecticut, Inc.*,
 16 A.3d 855 (Conn. Super. Ct. 2009) .................................................................... 5

*Browning v. Anheuser-Busch, LLC*,
 539 F.Supp.3d 965 (W.D. Mo. 2021) .................................................................... 6

*Business Men's Assurance Company of Am. v. Graham*,
 891 S.W. 2d 438 (Mo. App. W.D. 1994) ............................................................. 15

*Carter v. Alcon Laboratories, Inc.*,
 2014 WL 989002 (W.D. Mo. Mar. 13, 2014) ........................................................ 7

*Charles v. Spradling*,
 524 S.W.2d 820 (Mo. 1975) ................................................................................... 3

*Cohen v. Hertz Corp.*,
 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ...................................................... 11

*Conway v. CitiMortgage, Inc.*,
 438 S.W.3d 410 (Mo. 2014) ............................................................................... 4, 5

*Cruz v. FXDirectDealer, LLC*,
 720 F.3d 115 (2d Cir. 2013) ................................................................................... 9

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
 2012 WL 6013217 (E.D. Mo. Dec. 3, 2012) ....................................................... 15

Case 6:23-cv-03184-MDH    Document 26    Filed 10/24/23    Page 3 of 22

*Dedloff v. Whole Foods Market Group, Inc.*,
  2023 WL 5428501 (E.D. Mo. Aug. 23, 2023)................................................................. 6

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
  790 N.E.2d 1155 (N.Y. 2003) ..................................................................................... 12

*Estler v. Dunkin' Brands, Inc.*,
  2016 WL 5720814 (S.D.N.Y. Oct. 3, 2016)................................................................. 10

*Feeney v. Dell Inc.*,
  908 N.E.2d 753 (Mass. 2009)......................................................................................... 5

*Femmer v. Sephora USA, Inc.*,
  2021 WL 735685 (E.D. Mo. Feb. 25, 2021) ....................................................... passim

*Friend v. Cellco P'ship*,
  525 S.W.3d 149 (Mo. Ct. App. 2017) ........................................................................... 3

*Green v. Capital One, N.A.*,
  557 F.Supp.3d 441 (S.D.N.Y. Aug. 26, 2021) ........................................................... 10

*H.S. Constr. Co. v. Lohman*,
  950 S.W.2d 331 (Mo. Ct. App. 1997) ........................................................................... 3

*Huch v. Charter Communications, Inc.*,
  290 S.W.3d 721 (Mo. 2009)................................................................................... 12, 13

*Huffman v. Credit Union of Texas*,
  758 F.3d 963 (8th Cir. 2014)......................................................................................... 8

*Int'l Bus. Machs. Corp. v. Dir. of Rev.*,
  765 S.W.2d 611 (Mo. 1989)........................................................................................... 3

*Johnson v. Atkins Nutritionals, Inc.*,
  2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) ............................................................. 8

*Johnson v. Atkins Nutritionals, Inc.*,
  2018 WL 3398162 (W.D. Mo. July 12, 2018) .............................................................. 7

*Lebowitz v. Dow Jones & Co.*,
  508 F. App'x 83 (2d Cir. 2013)................................................................................... 11

*Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*,
  139 S.W.3d 201 (Mo. Ct. App. 2004) ......................................................................... 13

*Mclean v. Big Lots Inc.*,
  542 F.Supp.3d 343 (W.D. Pa. 2021) ............................................................................. 5

Case 6:23-cv-03184-MDH   Document 26   Filed 10/24/23   Page 4 of 22

*Muhammad v. Public Storage Co.*,
    2014 WL 3687328 (W.D. Mo. July 24, 2014) ................................................................. 8

*Nickel v. Stephens College,*
    480 S.W. 3d 390 (Mo. Ct. App., 2015) ..................................................................... 14

*Ports Petroleum Co., Inc. of Ohio v. Nixon*,
    37 S.W.3d 237 (Mo. 2001) ........................................................................................ 8

*Schott v. Target Corp.*,
    2018 WL 11511282 (St. Louis City Cir. Ct. June 8, 2018)................................ passim

*Schultz v. Hudson News Distributors, LLC*,
    2015 WL 6087595 (N.Y. 2015)................................................................................ 11

*Slaughter v. Bass Pro, Inc.*,
    2023 WL 27357 (W.D. Mo. Jan. 3, 2023)................................................................ 13

*State ex rel. Lohman v. Brown*,
    936 S.W.2d 607 (Mo. Ct. App. 1997) ....................................................................... 3

*Stein v. Novus Equities Co.*,
    284 S.W. 3d 597 (Mo. App. 2009) .......................................................................... 14

*Tolu v. Reid*,
    639 S.W.3d 504 (Mo. Ct. App. 2021) .................................................................... 6, 7

*Ward v. TheLadders.com, Inc.*,
    3 F.Supp.3d 151 (S.D.N.Y. Mar. 12, 2014)........................................................... 9, 10

*White v. Just Born, Inc.*,
    2017 WL 3130333 (W.D. Mo. July 21, 2017) ........................................................... 6

**STATUTES**

Missouri Revised Statutes § 144.190................................................................................ passim

Missouri Revised Statutes § 144.635................................................................................. 14

Mo. Rev. Stat. § 407.020 ............................................................................................... 7, 8

Mo Rev. Stat. § 407.020(1)............................................................................................. 7, 8

New York General Business Law ("GBL") § 349.............................................................. 3

**INTRODUCTION**

This is a simple case. Plaintiff Ginger Robertson ("Plaintiff") purchased a mattress from Defendant Whitestone Home Furnishings, LLC ("Defendant" or "Saatva"). During that purchase, Defendant misrepresented, and then subsequently overcharged, the correct amount of tax owed on the transaction. *See* Plaintiff's First Amended Complaint, ECF No. 15, ¶¶ 6-13 ("FAC"). Thus, Plaintiff brings five claims against Saatva due to its' deceptive practices.

**ARGUMENT**

I. **THE MISSOURI TAX REFUND PROCEDURE IS NEITHER APPLICABLE TO THE PRESENT FACTS NOR AN EXCLUSIVE REMEDY**

Defendant claims that "Missouri law is clear that the 'exclusive mechanisms' by which purchasers like Plaintiff may 'contest what they believe to have been improperly calculated and collected' sales or use taxes are the administrative tax refund procedures set forth in Section 144.190 of the Missouri Revised Statutes." Defendant's Motion to Dismiss, ECF No. 18, ("MTD" or "Motion") at 1. That is wrong for two reasons. First, Plaintiff is not seeking a tax refund from Defendant, but rather is seeking damages stemming from Defendant's unlawful conduct. Second, even if Plaintiff was seeking a tax refund, Missouri Courts have held that when the defendant is a retailer — such as Saatva — Mo. Rev. Stat. § 144.190.4 ("§ 144.190.4") is *a* refund procedure that Plaintiff can seek, but is *not* an exclusive one.

As an initial matter, Plaintiff's complaint seeks damages stemming from Defendant's unlawful conduct — not a tax refund as Defendant claims. *See* FAC ¶¶ 32, 49, 63-64. While the damages stem from Defendant's practice of overcharging tax monies, Missouri courts have held that a plaintiff is not seeking a tax refund under these circumstances. *See Femmer v. Sephora USA, Inc.*, 2021 WL 735685 at *9 (E.D. Mo. Feb. 25, 2021) ("[T]he Court agrees with plaintiff that this case is not properly classified as a tax refund case. Rather, she alleges that defendant

1

engages in a practice of applying a charge for miscalculated taxes. The remedy she seeks is not a tax refund but damages for a practice that she alleges may be unlawful, unfair, unethical, and possibly profitable to defendant."). Critically, Missouri courts have also found that when a plaintiff is seeking damages from the defendant seller, § 144.190.4 is neither applicable nor required. *See Schott v. Target Corp.*, 2018 WL 11511282 at *2 (St. Louis City Cir. Ct. June 8, 2018) ("Here, Plaintiffs are not seeking a refund of taxes from the state, but are seeking damages from Target. There is nothing in § 144.190.4 RSMo that indicates that its procedure is applicable or required.") (emphasis added). Therefore, § 144.190.4 is not an applicable remedy to the present action.

Regardless, even if the Court views this case as one where Plaintiff is seeking a refund (which it respectfully should not for the reasons detailed *supra*), Mo. Rev. Stat. § 144.190 is not an exclusive remedy when the defendant at issue is a retailer. Indeed, the analysis of whether Mo. Rev. Stat. § 144.190 applies as an exclusive remedy for a tax refund is dependent on who the defendant at issue is. For example, when the defendant is a government entity or representative, such as the Missouri Director of Revenue, courts have consistently held that Mo. Rev. Stat. § 144.190 is the exclusive remedy. *See Femmer*, 2021 WL 735685 at *7 ("Numerous Missouri cases have held that § 144.190 provides the exclusive remedy for recovering overpaid taxes. These cases arose in the context of lawsuits brought by taxpayers against the Missouri Director of Revenue, however."). However, when the defendant is a retailer, § 144.190.4 applies, and Missouri courts have not once found that § 144.190.4 is an exclusive remedy. *See Schott*, 2018 WL 11511282 at *1 ("No case has interpreted the procedure allowed by § 144.190.4 to be mandatory."). Indeed, Defendant fails to reference a single case where a court applying § 144.190.4 has found that the procedure is an exclusive remedy — rather Defendant

almost exclusively cites to Missouri[1] cases in which the defendant is a government entity or representative.[2] *See* MTD at 3-4.

The only case Defendant cites where a plaintiff brought an action against a non-governmental defendant is *Friend v. Cellco P'ship*, 525 S.W.3d 149, 154 (Mo. Ct. App. 2017). *See* MTD at 3-5. *Friend*, however, concerned a defendant mobile telecommunication provider — not a retailer such as Saatva — and therefore solely concerned the "special rules" of Mo. Rev. Stat. 144.190.7 ("§ 144.190.7") — not 144.190.4 — and is thus inapposite. *See Schott*, 2018 WL 11511282 at *1 ("Defendants argue that pursuant to <u>Friend</u>, this case must be dismissed because § 144.190 provides a retail customer's exclusive remedy for the recovery of sales taxes. However, it is clear that <u>Friend</u> related only to § 144.190.7, which sets forth a mandatory procedure that a mobile telecommunication customer must use to contest a tax or other charge.")[3]; *see also Femmer*, 2021 WL 735685 at *9 ("Defendant argues that <u>Friend</u> stands for the proposition that § 144.190.4 provides the exclusive procedure for seeking refunds of sales and use taxes. The Court disagrees. The <u>Friend</u> court was plainly addressing the 'special rules' for tax claims against telecommunications providers."). Indeed, § 144.190.7 is demonstrably distinguishable from § 144.190.4 in terms of whether the respective refund procedure is an

---

[1] Whether New York courts have held that New York General Business Law ("GBL") § 349 claims are barred by New York's exclusive remedy administrative procedures — as Defendant notes in a footnote — has no bearing on whether Plaintiff's GBL § 349 claim is viable under Missouri's non-exclusive remedy administrative procedure. *See* MTD at 4 n.4.

[2] Indeed, *Ackerman Buick, Inc. v. St. Louis Cnty.*, 771 S.W.2d 343, 343 (Mo. 1989); *Int'l Bus. Machs. Corp. v. Dir. of Rev.*, 765 S.W.2d 611, 611 (Mo. 1989); *H.S. Constr. Co. v. Lohman*, 950 S.W.2d 331, 331 (Mo. Ct. App. 1997); *Charles v. Spradling*, 524 S.W.2d 820, 820 (Mo. 1975); *State ex rel. Lohman v. Brown*, 936 S.W.2d 607, 607 (Mo. Ct. App. 1997); and *B & D Inv. Co. v. Schneider*, 646 S.W.2d 757, 759 (Mo. 1983) are all inapposite to the present facts due to their failure to consider whether 144.190.4 provided an exclusive remedy.

[3] Saatva also claims that *Femmer* is the only case to break away from "decades of binding Missouri precedent" when it distinguished *Friend*. MTD at 4, n.5. That is clearly wrong. *Schott* distinguished *Friend* for the exact same reason as *Femmer*. *See Schott*, 2018 WL 11511282 at *2; *Femmer*, 2021 WL 735685 at *9. Moreover, none of the cases cited by Defendant analyzed the differences between § 144.190.4 and § 144.190.7, whereas *Femmer* and *Schott* both did when distinguishing *Friend*. *Id.*

exclusive mechanism due to § 144.190.7's use of the mandatory term "shall" versus § 144.190.4's use of the permissive term "may." *See e.g., Femmer*, 2021 WL 735685 at *9 ("[T]he starting point for the <u>Friend</u> court's determination that § 144.190.7 is mandatory was the legislature's use of the word 'shall.' Subsection 4, by contrast, uses the permissive 'may'…") (emphasis in original); *see also Schott*, 2018 WL 11511282 at *1 ("By contrast, the section applicable here, § 144.190.4, states only that a purchaser that originally paid sales or use tax to a vendor or seller <u>may</u> submit a refund claim directly to the director of revenue …") (internal quotation marks omitted). Accordingly, § 144.190.4 is not an exclusive remedy.

## II. THE FAC ADEQUATELY STATES A CLAIM UNDER THE MMPA

Defendant argues that Plaintiff fails to adequately plead three elements of her Missouri Merchandising Practices Act ("MMPA") claim. MTD at 9. Defendant is wrong on each count.

### A. Defendant Committed An Unlawful Practice In Connection With The Sale Of Merchandise

Defendant argues that "the FAC does not allege 'a method, act or practice declared unlawful' by the MMPA," because "an 'unlawful' practice must occur 'in trade or commerce.'" MTD at 9-10. In doing so, Defendant misrepresents the law. Indeed, under the MMPA, an unlawful practice must occur "*in connection with* the sale or advertisement of any merchandise in trade or commerce…" 407.020(1) (emphasis added). The Missouri Supreme Court has analyzed what "in connection with" means under the MMPA, and determined that "section 407.020.1 prohibits the use of the enumerated deceptive practices if there is *a relationship between* the sale of merchandise and the alleged unlawful action." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (en banc) (emphasis added).

Here, it is clear that there is a direct relationship between the tax charged on Plaintiff's purchase of the mattress and Plaintiff's purchase of the mattress, as the amount of tax owed is

4

plainly based on a percentage of the total price of the sale of the mattress. FAC ¶ 7 ("When Plaintiff purchased the mattress on September 9, 2022, Defendant's website represented to Plaintiff at the time of check-out that the tax due on the transaction was $168.89."); *Conway*, 438 S.W.3d at 414 ("According to the statute, the unlawful action may occur *at any time before, during or after the sale* and by any person.") (emphasis added); *see also* FAC ¶¶ 3, 6, 9.

Moreover, Plaintiff could not purchase the mattress without paying the tax. *Conway*, 438 S.W.3d at 416 ("[E]nforcing the terms of the loan is in connection with the ongoing sale of the loan…"); FAC ¶ 7. Tellingly, Saatva ignores *Conway*, and instead relies solely on out-of-state authority to argue that the collection of tax does not fall under the MMPA. MTD at 10. These out-of-state authorities, however, rely on an analysis of Pennsylvania, Massachusetts, and Connecticut consumer protection statutes that do not include the same "in connection with" language found in the MMPA, and therefore are irrelevant to the present analysis. *See, e.g., Mclean v. Big Lots Inc.*, 542 F.Supp.3d 343, 349 (W.D. Pa. 2021) ("The UTPCPL applies to 'unfair or deceptive acts or practice *in the conduct of any trade or commerce*.") (emphasis in original); *Feeney v. Dell Inc.*, 908 N.E.2d 753, 770 (Mass. 2009) ("General Laws c. 93A prohibits 'unfair or deceptive practices *in the conduct of any trade or commerce*.'") (emphasis added); *Blass v. Rite Aid of Connecticut, Inc.*, 16 A.3d 855, 863 (Conn. Super. Ct. 2009) ("[T]he application of CUTPA is inappropriate because that law seeks to protect consumers from 'deceptive acts or practices *in the conduct of any trade or commerce*.'") (emphasis in original).

## B. Plaintiff Adequately Alleges That Defendant's Illegal Conduct Would Mislead A Reasonable Consumer

Defendant also argues that "Plaintiff's MMPA claim also fails because she does not allege that Saatva's purported overcollection of taxes 'would mislead a reasonable consumer' or 'cause a reasonable person' to purchase a mattress." MTD at 10. That is incorrect. As an initial

5

matter, Plaintiff's FAC clearly alleges that Saatva's practice of overcharging tax would mislead a reasonable consumer.  Plaintiff alleges that "Defendant's website represented[4] to Plaintiff at the time of check-out that the tax due on the transaction was $168.89.  Based on this representation, Plaintiff reasonably understood that this was the correct amount of tax due on the transaction."  FAC ¶ 7.  This conclusion makes sense as "most reasonable consumers are not experts in knowing the prevailing tax rate for any purchase they make.  Indeed, reasonable consumers rely on merchants to tell them how much tax they owe rather than investigating the correct rate every time they make a purchase."  FAC ¶ 8[5]; *contra Dedloff v. Whole Foods Market Group, Inc.*, 2023 WL 5428501, at *5 (E.D. Mo. Aug. 23, 2023) ("But a reasonable consumer would notice if a package weighed half as much as she expected and would further investigate the reason for the discrepancy between the product's size and its weight by reading the package.").  Thus, Plaintiff sufficiently alleges that Saatva's misrepresentation would mislead a reasonable consumer.

Plaintiff's FAC also adequately alleges that Defendant's practice would cause a reasonable person to purchase a mattress from Defendant.  MTD at 10.  Plaintiff alleges that "[t]he tax Defendant charged on the sale of the mattress was $155.52.  The actual amount owed was $81.12.  Thus, Defendant's misrepresentation caused a loss to Plaintiff of $74.40."  FAC ¶ 12.  Critically, the FAC further states that "[h]ad Plaintiff known that she was being forced to pay $74.40 more than she owed, she would not have purchased the mattress from Defendant's

[4] In response, Saatva argues that it was required by the government to state the amount of tax owed on customer's online purchases.  MTD at 11.  However, Defendant was required to represent the *correct* amount of tax owed to consumers such as Plaintiff, which Saatva failed to do as a result of its own conduct.  *White v. Just Born, Inc.*, 2017 WL 3130333 (W.D. Mo. July 21, 2017) ("The focus of the statutory scheme [of the MMPA] is on the defendant's conduct.").

[5] This pleading is in direct contrast to the Court's rationale in dismissing the MMPA claim in *Bell v. Annie's, Inc.*, 2023 WL 3568623 at *3 (E.D. Mo. May 18, 2023), cited by Defendant.  *Bell*, 2023 WL 3568623, at *3 ("The Complaint lacks any plausible explanation as to why a reasonable consumer would not understand that the box, which stated three times that it contained five pouches of fruit snacks and two times that they weighed a total of four ounces, meant exactly what it said."); *see* MTD at 12.

6

website.  Nor would any reasonable consumer."  FAC ¶ 13[6]; *see also Browning v. Anheuser-Busch, LLC*, 539 F.Supp.3d 965, 972 (W.D. Mo. 2021) ("Plaintiffs allege that the type of alcohol is important to consumer decisions because it relates to the Product's content, and further allege they would not have purchased the Products, or paid less for them, absent AB's misrepresentations.  Plaintiffs thus adequately allege materiality.").  Accordingly, the FAC sufficiently alleges that Defendant's unlawful conduct of misrepresenting and overcharging the correct tax owed would cause a reasonable person to purchase the mattress.

Moreover, Defendant is mistaken that an "unethical practice" cannot constitute conduct governed by the MMPA.  MTD at 11.  The MMPA prohibits unlawful practices.  Mo. Rev. Stat. § 407.020.  Under the statute, unlawful practices include unfair practices.  Mo Rev. Stat. § 407.020(1) ("[A]ny deception, fraud, false pretense, false promise, misrepresentation, <u>unfair practice</u> or …") (emphasis added).  Critically, under the MMPA, the Missouri Attorney General defines an unfair practice as "any practice which … is <u>unethical</u>, oppressive, or unscrupulous." 15 C.S.R. § 60-8.020[7] (emphasis added); *see also Carter v. Alcon Laboratories, Inc.*, 2014 WL 989002 at \*4 (W.D. Mo. Mar. 13, 2014) ("Although unfair practices are not defined in the MMPA, the Act empowers the state attorney general to promulgate rules necessary to administer and enforce it, and such rules have independent power as law.") (internal quotation marks omitted).  Thus, the allegation that a defendant engages in unethical conduct is sufficient for

---

[6] Saatva claims that *Tolu v. Reid*, 639 S.W.3d 504, 538 (Mo. Ct. App. 2021) supports its argument that Plaintiff failed to enter the transaction due to Defendant's alleged misconduct.  MTD at 12.  The appellate court, however, did not conduct any analysis on that issue — instead focusing on the appellant's failure to discuss the 2020 Amendments to the MMPA's impact on "claims that should be filed under Missouri's malpractice statute." *Id.* at 538 (internal quotation marks omitted); *id.* ("[Appellant's] failure to challenge this independent basis for the trial court's dismissal of the MMPA claims against Dr. Reaid and Van Luven is fatal to her appeal.").

[7] Whether 15 C.S.R. § 60-8.020 was initially implemented prior to the 2020 amendments to the MMPA, as Defendant notes, is irrelevant as it remains in effect present day, three years after the amendments.  *See* MTD at 11.

7

alleging conduct governed by the MMPA — which is precisely what Plaintiff alleges here.[8]
FAC ¶ 41.

In any event, Plaintiff sufficiently alleges that Defendant misrepresented the correct price of tax owed — conduct that is also and separately governed by the MMPA. Mo. Rev. Stat. § 407.020(1) ("[A]ny deception, fraud, false pretense, false promise, misrepresentation, unfair practice or …") (emphasis added); FAC ¶¶ 7-12, 34. In response, Defendant argues that "the question of the 'required amount' of tax is a question of law that cannot support a fraud claim." MTD at 11 n. 9. The MMPA extends to conduct far beyond fraud, however, and Plaintiff's claim does not sound in fraud, but rather in misrepresentation and unfair practices. *Muhammad v. Public Storage Co.*, 2014 WL 3687328 at *3 (W.D. Mo. July 24, 2014) ("The MMPA addresses misconduct beyond fraud and includes 'unfair practices.'"); *see also Huffman v. Credit Union of Texas*, 758 F.3d 963, 968 (8th Cir. 2014) ("[T]he MMPA's consumer protections extend far beyond common law fraud.").

### C. Plaintiff And Class Members Suffered An Ascertainable Loss Of Money

Finally, Defendant argues that "Plaintiff's MMPA claim should be dismissed because she cannot allege 'an ascertainable loss of money or property.'" MTD at 12. This argument is wrong. Indeed, Plaintiff expressly alleges that "Defendant's misrepresentation caused a loss to Plaintiff of $74.40." FAC ¶ 12. Therefore, Plaintiff has alleged an ascertainable loss of $74.40, which is the amount that she overpaid in the transaction of the mattress due to Saatva's

---

[8] In addition, Plaintiff sufficiently alleges Defendant's engagement in an unfair practice through its engagement in the practice of overcharging Plaintiff. *See* FAC ¶¶ 2, 13; *see also Johnson v. Atkins Nutritionals, Inc.*, 2018 WL 3398162, at *3 (W.D. Mo. July 12, 2018) (Harpool, J.) ("The Missouri Supreme Court, in discussing what constitutes an 'unfair practice' within the meaning of the MMPA, described the words of Section 407.020 as 'unrestricted, all-encompassing, and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree.'") (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001) (en banc)).

8

misrepresentation of the correct amount of tax owed.  *Johnson v. Atkins Nutritionals, Inc.*, 2017 WL 6420199 at *10 (W.D. Mo. Mar. 29, 2017) (Harpool, J.) ("Missouri follows the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction.  In order to demonstrate an ascertainable loss under this rule, a plaintiff need only allege that the product was worth less than the product as represented.") (internal citations and quotation marks omitted).

## III.    THE FAC ADEQUATELY STATES A CLAIM UNDER GBL § 349

Defendant argues that Plaintiff has failed to state a claim under GBL § 349 for four reasons: 1) that the allegedly deceptive conduct occurred outside of New York; 2) that the collection of taxes is not consumer-oriented conduct; 3) that Plaintiff has failed to allege a deceptive act or practice; and 4) that Plaintiff's claims are barred by the voluntary payment doctrine.  Motion at 5-8.  Defendant is wrong on all counts.

### A.  The Alleged Deception Occurred in New York

New York's GBL provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby unlawful." GBL § 349(a).  New York courts have interpreted this territorial requirement to apply to out-of-state consumers making transactions on a New York based website.  *See Ward v. TheLadders.com, Inc.*, 3 F.Supp.3d 151, 167 (S.D.N.Y. Mar. 12, 2014) (finding out-of-state consumers adequately pleaded a claim under GBL § 349 where the "defendant operated a website in New York and maintained its bank account in New York."); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122-23 (2d Cir. 2013).  Defendant's reliance on *Goshen* is misplaced, as the Second Circuit has clearly stated that "the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection

9

to the allegedly deceptive transaction, rather than on the residency of the parties." *Cruz*, 720 F.3d at 122 (internal citations omitted).

Here, Plaintiff alleges that "Defendant…has its principal place of business at Whitestone, New York. Defendant conducts, and at all relevant times, has conducted business in Missouri through remote sales channels, including making sales through its internet website. Defendant operates its internet website and processes customer payments in New York." FAC, ¶¶ 14-15. Such allegations are sufficient to establish that Defendant's deceptive conduct occurred in New York. *Ward*, 3 F.Supp.3d at 167.

### B. Overcharges Related To Retail Purchases Is Consumer-Oriented Conduct

Defendant argues that the collection of tax is not consumer-oriented conduct under GBL § 349. Motion at 6. That is wrong, as Defendant misconstrues both the nature of Plaintiff's allegations and the distinctions between the New York and Missouri tax code.

First, Defendant's argument that it is merely "an agent for the State," with "no interest in the amounts so received," has been rejected by Missouri courts at the pleading stage. *See Femmer*, 2021 WL 735685, at *7 n.3 ("The question of whether defendant remitted the alleged excess funds to the State is a factual matter not properly considered on a motion to dismiss."). Second, Defendant's reliance on New York authority ignores the distinctions between the New York and Missouri tax codes. *See, e.g.*, *Estler v. Dunkin' Brands, Inc.*, 2016 WL 5720814, at *2 (S.D.N.Y. Oct. 3, 2016) (finding "the administrative remedy set forth in § 1139 [of the New York tax code] is the exclusive remedy."). More importantly, Missouri courts routinely reject characterizations that the damages sought against defendants are tax refunds. *Femmer*, 2021 WL 735685 at *9 ("the Court agrees with plaintiff that this case is not properly classified as a tax refund case.").

"Under § 349, conduct is 'consumer-oriented' when it involves acts or practices with a broad impact on consumers at large." *Green v. Capital One, N.A.*, 557 F.Supp.3d 441, 454 (S.D.N.Y. Aug. 26, 2021). As noted, *supra*, Plaintiff is not seeking a tax refund from Defendant, but rather, damages related to Defendant's deceptive practices of uniformly overcharging consumers. FAC, ¶¶ 28, 32. Accordingly, Plaintiff's allegations concern consumer-oriented conduct.

### C. Overcharging Consumers Is A Deceptive Practice

Defendant argues that Plaintiff's claim under GBL § 349 fails because "she has not alleged a deceptive act or practice." Motion at 7. That is wrong.

Under GBL § 349, a deceptive practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 85 (2d Cir. 2013). Here, "Plaintiff and class members reasonably relied on Defendant's representations to them at their time of checkout that a certain amount of tax was due on their transactions." FAC, ¶ 9. Moreover, "[h]ad Plaintiff known that she was being forced to pay $74.40 more than she owed, she would not have purchased the mattress from Defendant's website. Nor would any reasonable consumer." *Id.*, ¶ 13. Plaintiff has satisfied her burden at the pleading stage and the authority relied upon by Defendant is inapposite. *See Cohen v. Hertz Corp.*, 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) (GBL § 349 claim dismissed because the court lacked jurisdiction due to the specific requirements of New York's tax code); *Schultz v. Hudson News Distributors, LLC*, 2015 WL 6087595, at *3 (N.Y. 2015) (GBL § 349 dismissed because plaintiff made "no allegation that the collection of the sales tax was 'material' to his purchase.").

### D. The Voluntary Payments Doctrine Does Not Apply

Defendant argues that the voluntary payments doctrine bars Plaintiff's claim because she has not alleged "a payment as a result of fraud or mistake of material fact." Motion at 8. Such an assertion largely ignores the allegations in the FAC. ¶ 8 ("Plaintiff and class members would not have known whether the merchandise they purchased from Defendant was being shipped from within the state or coming from another state."); ¶ 13 ("Had Plaintiff known that she was being forced to pay $74.40 more than she owed, she would not have purchased the mattress…"); ¶ 30 ("The foregoing acts and practices are misleading in a material way because they mischarge the correct price owed…."). Courts in both New York and Missouri require that plaintiffs have full knowledge of the facts in order for the voluntary payments doctrine to apply. *See Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003); *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009). Because Plaintiff and putative class members could not have known whether the products they purchased were being shipped from outside the state the voluntary payments doctrine does not apply.

## IV. PLAINTIFF'S EQUITABLE CLAIMS DO NOT FAIL AS A MATTER OF LAW

Defendant purports that "Plaintiff's equitable claims fail for four separate and independent reasons." MTD at 12. None have merit.

*First*, Defendant argues that "Plaintiff does not plausibly allege that Saatva retained any allegedly conferred benefit." *Id.* at 13. That is false. Plaintiff alleges that Defendant "received and retained the benefit of funds to which they were not entitled and received in violation of Missouri law." FAC ¶ 52. In response, Defendant argues that Plaintiff has not shown that Saatva failed to comply with its "obligation to remit collected taxes…" MTD at 13. That argument is premature, however, at the motion to dismiss stage of the proceedings, as discovery has not yet taken place. *Femmer*, 2021 WL 735685 at *10 ("[D]efendant argues it was obligated

to remit any taxes it collected to the State and thus plaintiff cannot properly claim that it received and retained these excess funds.  This argument cannot prevail at the dismissal stage because there is no evidence regarding what defendant did with the excess monies it collected.").

*Second*, Defendant claims that "equitable theories are improper when a plaintiff has an adequate remedy available…. [and] Missouri's tax refund procedures provide an adequate … remedy."  MTD at 13.  As discussed supra, § I, however, Plaintiff's claims are premised on seeking damages from Defendant's unlawful practices — *not* a tax refund.  *See, e.g., Femmer*, 2021 WL 735685 at \*9 (E.D. Mo. Feb. 25, 2021).  Accordingly, Missouri's tax refund procedures are inapplicable to this action, and fail to constitute an adequate remedy.  *See Schott*, 2018 WL 11511282 at \*2 (St. Louis City Cir. Ct. June 8, 2018) ("Here, Plaintiffs are not seeking a refund of taxes from the state, but are seeking damages from Target.  There is nothing in § 144.190.4 RSMo that indicates that its procedure is applicable...") (emphasis added).

*Third*, Defendant argues that Plaintiff's equitable claims "are entirely duplicative of her consumer fraud claims and seek the same relief," and therefore should be dismissed.  MTD at 13. Plaintiff, however, can plead her equitable claims in the alternative.  *See, e.g., Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201, 205 (Mo. Ct. App. 2004) ("Such pleadings sufficiently state a cause of action for unjust enrichment against the general contractor. Further, the plaintiff has the right to plead its claims in the alternative.  Missouri has allowed alternative pleading since 1855."); *see also Slaughter v. Bass Pro, Inc.*, 2023 WL 27357 at \*8 (W.D. Mo. Jan. 3, 2023) ("Plaintiff also argues (persuasively) that it would be improper to dismiss the claim for unjust enrichment at this early pleading stage to the extent such claims may properly be pleaded in the alternative.").

13

*Fourth*, Defendant argues that Plaintiff's equitable claims "are barred by Missouri's voluntary payment doctrine." MTD at 13. The voluntary payment doctrine, however, requires consumers to have "full knowledge of the facts" for it to apply. *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009) (en banc). Here, Plaintiff was not able to have the full knowledge of the facts in order for her to determine whether the tax amount represented by Defendant was accurate as she did not know — at the time of purchase — whether her order was coming from in-state or out-of-state, and thus whether sales or use tax should apply to her purchase. FAC ¶ 8 ("Plaintiff and class members would not have known whether the merchandise they purchased from Defendant was being shipped from within the state or coming from another state. This would prevent any reasonable consumer from being able to accurately calculate the amount of tax due.").

## V.  PLAINTIFF ADEQUATELY STATES A CLAIM FOR NEGLIGENCE

Defendant argues that Plaintiff's negligence claim fails as a matter of law for two reasons. First, Defendant argues that it did not owe Plaintiff a duty of care. Motion at 14. Second, Defendant argues that Plaintiff's claim is barred by the economic loss doctrine. *Id.* at 15. Defendant is wrong on both counts.

Under Missouri law, a legal duty may arise under law, contract, or by statute. *Stein v. Novus Equities Co.*, 284 S.W. 3d 597, 605 (Mo. App. 2009). Missouri Revised Statutes § 144.635 establishes a legal duty on Defendant to charge use tax on the types of transactions at issue in this case. Here, Plaintiff alleges that "Defendant owed Plaintiff … a duty to exercise reasonable care to determine, represent, charge, and collect the correct amount of tax on sales of products through remote sales channels … that were delivered from an out-of-state facility." FAC, ¶ 61. Missouri courts have refused to dismiss negligence claims under identical facts. *See*

*Femmer*, 2021 WL 735685, at * 11; *Schott*, 2018 WL 11511282, at *2.  Defendant's reliance on *Nickel v. Stephens Coll.* is misguided.  There, the court found "nothing in the statutes…that suggests it was the legislatures intent to make the violation of these statutes actionable in negligence" "*[w]hen the Legislature has established other means of enforcement*."  480 S.W. 3d 390, 403 n.11 (Mo. Ct. App., 2015).  As noted, *supra*, Plaintiff is "not seeking a refund of taxes from the state, but [is] seeking damages from [defendant].  There is nothing in § 144.190.4 RSMo that indicates that its procedure is applicable or required."  *Schott*, 2018 WL 11511282, at *2.  Accordingly, *Nickel* is inapplicable to the facts presented here.

Defendant's argument that "Plaintiff's negligence claim is barred by the economic loss doctrine" fares no better.  Motion at 15.  The economic loss doctrine typically bars a plaintiff from seeking to recover in tort for losses that are purely economic.  *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W. 3d 184, 192 (Mo. Ct. App. 2010).  However, "Missouri courts have recognized an exception to the economic loss doctrine where the defendant breached a public duty."  *Dannix Painting, LLC v. Sherwin-Williams Co.*, 2012 WL 6013217, *2 (E.D. Mo. Dec. 3, 2012) (citing *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W. 2d 669, 672-73 (Mo. App. 1987)); *Business Men's Assurance Company of Am. v. Graham*, 891 S.W. 2d 438, 453 (Mo. App. W.D. 1994) ("The action may be in tort…if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement.").  Courts in Missouri have refused to apply the economic loss doctrine under identical facts.  *See Femmer*, 2021 WL 735685, at * 11.

Dated: October 24, 2023                            Respectfully submitted,

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

**BURSOR & FISHER, P.A**
Yitzchak Kopel
1330 Avenue of the Americas
32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

*Counsel for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Yitzchak Kopel, hereby certify that on October 24, 2023, a copy of the foregoing document was filed electronically using the CM/ECF System, which will send notification of such filing to all counsel of record.

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

17