## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

GINGER ROBERTSON, individually and on behalf of all others similarly situated,

                Plaintiff,

    v.

WHITESTONE HOME FURNISHINGS, LLC d/b/a Saatva

                Defendant.

Case No. 6:23-cv-03184-MDH

Hon. M. Douglas Harpool

## PLAINTIFF'S *UNOPPOSED* MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 1

THE PROPOSED SETTLEMENT ....................................................................................... 2

    A.    The Proposed Settlement Class Definition............................................................ 2

    B.    Monetary Relief and the Settlement Fund............................................................. 3

    C.    Notice and Settlement Administration .................................................................. 3

    D.    Exclusion and Objection Procedure ...................................................................... 4

    E.    Release of Liability ............................................................................................... 4

DISCUSSION ....................................................................................................................... 4

    A.    Legal Standard at the Preliminary Approval Stage .............................................. 5

    B.    The Settlement's Terms are Fair, Reasonable, and Adequate,
        Taking Into Account the Factors Listed in Federal Rule 23(e)(2) ........................ 6

        1.    Plaintiff and Class Counsel have capably represented the
            Settlement Class Members and will continue to do so. ................................ 6

        2.    The Settlement was negotiated at arm's-length. ........................................... 7

        3.    The Settlement provides meaningful monetary compensation
            and adequate relief to the Settlement Class Members ................................. 7

            a.    The Settlement delivers immediate relief and avoids
                the considerable costs, risks, and delays of trial and appeal. ............. 7

            b.    The Settlement provides for an efficient and effective
                method of distributing relief to the Settlement Class Members. ....... 8

            c.    The anticipated award of attorneys' fees under the
                Settlement is fair and reasonable. ....................................................... 9

            d.    Apart from the Settlement Agreement, there have been
                no other agreements made in connection with the Settlement......... 10

        4.    The Settlement treats the Settlement Class Members
            equitably relative to each other. .................................................................. 10

    C.    The Court Should Grant Class Certification for Purposes of Settlement.............. 10

        1.    Plaintiff and Class Counsel have capably represented the
            Settlement Class Members and will continue to do so. .............................. 11

            a.    The Settlement Class is sufficiently numerous,
                and joinder is impracticable . ............................................................ 11

i

b. The Settlement Class Members' claims share common questions of law and fact................................................... 11

c. Plaintiff's claims are typical of those of the Settlement Class Members................................................... 11

d. Plaintiff and Class Counsel will continue to adequately represent the Settlement Class Members and protect their interests. ............................................. 13

2. The Settlement Class is Certifiable Under Rule 23(b)(3) Because Common Questions Predominate Over Individual Questions, and Class Adjudication is Superior to Other Methods of Resolution.......... 13

3. The proposed Notice Plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies due process ........ 15

CONCLUSION.................................................................................................... 15

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ahmad v. City of St. Louis, Missouri*,
2019 WL 2009589 (E.D. Mo. May 7, 2019) ................................................................ 12

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996) ...................................................................................... 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................ 10, 13, 14

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*,
446 F.2d 763 (8th Cir. 1971) ...................................................................................... 11

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ...................................................................................... 14

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...................................................................................................... 10

*Cope v. Let's Eat Out, Inc.*,
319 F.R.D. 544 (W.D. Mo. 2017) .......................................................................... 12, 14

*Cromeans v. Morgan Keegan & Co.*,
303 F.R.D. 543 (W.D. Mo. 2014) .......................................................................... 11, 12

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .................................................................................................... 14

*George v. Uponor Corp.*,
2015 WL 5255280 (D. Minn. Sept. 9, 2015) .............................................................. 13

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ........................................................................................ 9

*In re Charter Commc'ns, Inc., Sec. Litig*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) .............................................................. 7

*In re Xcell Energy*,
363 F. Supp. 2d 984 (N.D. Ill. 2005) ........................................................................... 9

*Johnston v. Comerica Mortgage*,
83 F.3d 241 (8th Cir. 1996) .......................................................................................... 9

iii

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017) ............................................................................... 9

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ............................................................................. 15

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ............................................................................................. 15

*Rawa v. Monsanto Co.,*
    934 F.3d 862 (8th Cir. 2019) ................................................................................. 7

*Schoenbaum v. E.I. Dupont De Nemours & Co.,*
    2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) .................................................. 5, 6, 14

*Schumacher v. SC Data Center, Inc.,*
    2016 WL 7007539 (W.D. Mo. Nov. 29, 2016) ...................................................... 4

*Scott v. Boyd Bros. Transp., Inc.,*
    2014 WL 12535301 (W.D Mo. Sept. 5, 2014) ..................................................... 10

*Swinton v. SquareTrade, Inc.,*
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ........................................................ 6

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ............................................................................................. 11

## STATUTES

Mo. Ann. Stat. 407.010 ........................................................................................... 1

New York General Business Law § 349 ................................................................... 1

## RULES

Fed. R. Civ. P. 23(a) ................................................................................. 10, 11, 12, 13

Fed. R. Civ. P. 23(b) ........................................................................................*Passim*

Fed. R. Civ. P. 23(c) ................................................................................... 6, 11, 15

Fed. R. Civ. P. 23(e) ............................................................................................... 6

## OTHER AUTHORITIES

*Newberg on Class Actions* § 11.25 (4th ed. 2002) .................................................. 5

iv

*Newberg on Class Actions* § 3:20 (5th ed. 2021) ....................................................................... 11

*Manual for Complex Litigation (Fourth)* § 21.612 (2004) ........................................................ 5

v

## INTRODUCTION

After over a year of contentious litigation, followed by negotiations and approximately six months spent working together to secure a tax refund from the Missouri Department of Revenue ("MDOR") based on a refund of taxes Whitestone Home Furnishings, LLC d/b/a Saatva ("Defendant" or "Saatva") collected on certain sales made via its website, saatva.com (the "Website"), for shipment to Missouri delivery addresses, the Parties are pleased to report that they have reached a classwide settlement that favorably resolves this case. The Parties have entered into a Settlement Agreement,[1] under which Defendant has agreed to provide $246,467.16, which has already been refunded by the MDOR into a Settlement Fund to be distributed to Settlement Class Members who do not opt out of the Settlement. There is no claims process. Each Settlement Class Member will automatically receive a *pro rata* share of the Settlement Fund after deductions for Court-awarded Attorneys' Fees and Litigation Expenses, Incentive Award to the Settlement Class Representative, and the expenses associated with administering the Settlement. Plaintiff respectfully requests that the Court enter an order (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Class for settlement purposes only; (3) appointing Plaintiff as Settlement Class Representative; (4) approving the proposed Notice Plan; (5) approving Yitzchak Kopel of Bursor & Fisher, P.A. as Class Counsel; and (6) setting a date for the Final Approval Hearing.

## BACKGROUND

Plaintiff initiated this lawsuit on June 21, 2023 individually and on behalf of a putative class, asserting claims under four counts for: (1) violations of New York General Business Law § 349, (2) violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat.

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to have the meanings given to them in the Parties' Settlement Agreement, a copy of which is attached to the Declaration of Yitzchak Kopel as Exhibit A.

1

407.010 *et seq.*, (3) Unjust Enrichment; (4) Money Had and Received; and (5) Negligence. ECF Nos. 1 & 15 ("FAC"), ¶¶ 27–64. On August 22, 2023, Defendant filed a motion to dismiss, and in response Plaintiff filed the First Amended Complaint on September 12, 2023. *See* ECF Nos. 11 & 15. On September 26, 2023, Defendant filed a motion to dismiss the First Amended Complaint, and this Court denied Defendant's motion to dismiss the First Amended Complaint on April 15, 2024. ECF Nos. 17 & 36. The Parties then went to mediation before the Hon. Frank Maas (Ret.), where they reached an agreement in principle to settle the action. Declaration of Yitzchak Kopel ("Kopel Decl.") ¶ 10. Following the Settlement Agreement, on July 12, 2024, the Parties filed a joint motion requesting a stay from the Court, suspending all deadlines in the action until further order of the Court to pursue the refund with the MDOR. ECF No. 41. The Parties worked together over the last 12 months on a Refund Claim that Saatva, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Saatva charged on Qualifying Purchases. Kopel Decl. ¶¶ 12–15. As part of the Settlement Agreement, Saatva agreed to contribute any refunded monies to the Settlement Fund. Kopel Decl., Ex. A at ¶ 1(a)(i) ("Ex. A"). In July 2025, the MDOR processed and sent the entire Refund Proceeds ($246,467.16) to Bursor & Fisher, P.A., which was placed in an escrow account and formed the proceeds for the Settlement Fund. *Id.* at ¶ 14.

## THE PROPOSED SETTLEMENT

### A. The Proposed Settlement Class Definition

The Proposed Settlement would establish a Settlement Class defined as follows:

> [A]ll consumers who made at least one Qualifying purchase from June 21, 2018 through June 18, 2024 (such period, the "Class Period").

Ex. A at ¶ 1(b). A Qualifying Purchase is defined as follows:

> [A] retail transaction for the purchase of tangible personal property from Defendant for which all of the following are true: (a) the transaction was made via Defendant's website, www.saatva.com; (b) the transaction was completed between June 21, 2018, through

2

June 18, 2024; (c) the purchased property was shipped by or on behalf of Defendant from a location outside the State of Missouri; (d) the purchaser's delivery address was within the State of Missouri; and (e) Defendant charged the purchaser an amount of tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction.

*Id.*

## B. Monetary Relief and the Settlement Fund

As part of the Settlement, Saatva has agreed to establish a Settlement Fund comprised of the Refund Amount of $ 246,467.16, which the MDOR sent to Bursor & Fisher, P.A. in July 2025. Kopel Decl. ¶ 15. The Refund Amount currently sits in an escrow account. *Id.* The entire amount of the Class Settlement Amount will be distributed *pro rata* to Settlement Class Members from the Settlement Fund after deductions for Notice and Administration Expenses and any Court-awarded Attorney's Fees and Litigation Expenses and a Service Award payment to Plaintiff will also be distributed from the Settlement Fund. Ex. A at ¶ 4(g).

## C. Notice and Settlement Administration

The Parties have engaged Simpluris to provide Notice to the Class, handle distribution to Settlement Class Members, and perform other services required by the Settlement Agreement, including responding to Class Members' inquiries. The proposed Notice Forms are attached to the Kopel Decl. as Exhibits B, C and D, and should be approved by the Court. Saatva will prepare a Class List identifying Settlement Class Members and provide it to the administrator, providing the basis for the Notice Plan. Ex. A at ¶ 4(c).

Notice shall be sent by email to all Settlement Class Members for whom a valid email address is available. Ex. A ¶ 4.1(b). In the event transmission of email notice results in any "bounce-backs," the Settlement Administrator shall mail notice. The Notice informs Settlement Class Members of their rights, including the right to be excluded from, comment upon and/or object to the Settlement Agreement or any of its terms.

3

**D. Exclusion and Objection Procedure**

In accordance will Federal Rule 23(c)(2) and Due Process, Settlement Class Members will have the opportunity to exclude themselves from the Settlement or object to its approval. *Id.* at ¶¶ 4(e)–(d). The procedures and deadlines for filing opt-out requests and objections are explained on the Settlement Website and in the Detailed Notice which will advise Settlement Class Members of their rights: (a) to exclude themselves from this Settlement Agreement and forego its benefits but preserve any rights they may have to pursue claims against Saatva; and (b) to object to this Settlement Agreement personally or through counsel. *Id.* The settlement website will include a fillable online "Opt-Out Form" that Settlement Class Members may use to exclude themselves from the Agreement. *Id.* at ¶ 4(d). Further, any Settlement Class Member other than Plaintiff may object to this Settlement Agreement by mailing a letter via First Class U.S. Mail to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline. *Id.* at ¶ 4(e).

The Settlement Website also informs Settlement Class Members that there will be a final approval hearing, which will be their opportunity to appear and have their objections heard. *Id.*

**E. Release of Liability**

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and its affiliated entities and other Releasees a full release of all claims arising out of, related to, or connected with the alleged facts, circumstances, and occurrences underlying the claims in this matter, as detailed in Section 5 of the Settlement Agreement, which both the Settlement Website and Detailed Notice explain. *Id.* at ¶¶ 4(d), 5.

## DISCUSSION

There is a strong judicial and public policy favoring the resolution of litigation through settlement, and this policy is "particularly muscular in class action suits." *Schumacher v. SC Data*

*Center, Inc.*, No. 2:16-cv-04078, 2016 WL 7007539, at *2 (W.D. Mo. Nov. 29, 2016). The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Parties quite frequently enter into settlement agreements before a decision has been reached whether to certify a class. . . . Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution. . . . An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation (Fourth)* § 21.612 (2004).

Class action settlements are subject to court approval, and courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions* § 11.25, at 38–39 (4th ed. 2002). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg* § 11.25, at 38–39. If the Court finds the settlement proposal "within the range of possible approval," the settlement will be preliminarily approved, notice will issue, and the case will ultimately proceed to the final approval hearing. *Newberg* § 11.25, at 38–39.

## A. Legal Standard at the Preliminary Approval Stage

At the preliminary approval stage, the "fair, reasonable, and adequate" standard is a lower bar, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies. *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009). The goal of the preliminary approval hearing is to decide whether there is a sufficient reason to notify the class members of the proposed settlement to give them an opportunity to voice their support or opposition to the settlement. *Newberg* § 11.25, at 38–39.

To determine whether preliminary approval is appropriate, a district court considers whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the

5

class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see, e.g.*, *Swinton v. SquareTrade, Inc.*, No. 18-CV-144, 2019 WL 617791, at \*5 (S.D. Iowa Feb. 14, 2019) ("If these two elements are satisfied, the Court will consider whether the parties' proposed method of giving notice satisfies the requirements set out in Rule 23(c)(2)(B).").

## B. The Settlement's Terms are Fair, Reasonable, and Adequate, Taking Into Account the Factors Listed in Federal Rule 23(e)(2)

### 1. *Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so.*

The first factor listed under Rule 23(e)(2) is satisfied here because Class Counsel is "qualified, experienced, and will competently and vigorously prosecute the suit." *See Schoenbaum*, 2009 WL 4782082, at \*7. As set forth in the declaration from Class Counsel, filed herewith, proposed Class Counsel have extensive experience handling class actions and complex litigation, and have represented consumers in state and federal courts throughout the country for many years. Kopel Decl. ¶¶ 6, 18–19.

The procedural history of this case also demonstrates the effectiveness of Class Counsel's representation. Class Counsel overcame Saatva's efforts to have this case dismissed under Rule 12(b)(6) early on, resulting in an order denying Defendant's motion to dismiss, sustaining Plaintiff's claims as well as the allegations on behalf of the putative class members. ECF No. 36. Class Counsel also diligently pursued the Refund Claim over the last six months. Kopel Decl. ¶¶ 11, 14. Alongside Class Counsel, Plaintiff has and will continue to adequately represent the Settlement Class Members. Plaintiff's interests are entirely representative of and aligned with the interests of the proposed Settlement Class. Further, Plaintiff's and Class Counsel's continual pursuit of this matter demonstrates that they have been, and will remain, zealous advocates for the Settlement Class Members. As a result, this factor weighs in favor of preliminary approval of the Settlement.

## 2. The Settlement was negotiated at arm's-length.

There is an initial presumption that a proposed settlement is fair, reasonable, and adequate when it was the result of arms-length negotiations. *In re Charter Commc'ns, Inc., Sec. Litig,* No. 4:02-CV-1186, 2005 WL 4045741, at *1, 5 (E.D. Mo. June 30, 2005) (finding that negotiations were at "arm's-length" where they were conducted between informed and experienced counsel and supervised by a retired federal judge acting as a mediator). Here, the Parties only reached a settlement after protracted litigation and negotiations. Even after the Settlement Agreement was finalized, the Parties worked together for another year in order to secure the Refund Claim from the MDOR which established the Settlement Fund. Kopel Decl. ¶¶ 11, 14. The contentiousness of these negotiations, as well as the Parties' efforts to keep this Court informed of the Refund Claim process, demonstrate that the Settlement was negotiated at arm's-length, free of collusion.

Given the tenacity with which this case has been litigated, the efforts to secure the Refund Claim on behalf of the Settlement Class, coupled with the excellent result obtained on behalf of the Settlement Class Members, it is clear that this Settlement was reached due to good-faith negotiations rather than collusion.

## 3. The Settlement provides meaningful monetary compensation and adequate relief to the Settlement Class Members

### a. The Settlement delivers immediate relief and avoids the considerable costs, risks, and delays of trial and appeal.

If approved, the Settlement will make monetary relief *immediately* available for the Settlement Class Members, as opposed to years in the future, if ever. As stated above, every Settlement Class Member shall be entitled to receive a *pro rata* share of the Settlement Fund after deductions set forth in the Settlement Agreement. This is an outstanding result. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory. *Rawa v. Monsanto Co.*, 934 F.3d 862, 869 (8th Cir. 2019) ("[A]

7

settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.").

While Plaintiff believes that she would ultimately prevail on the merits in this litigation, she acknowledges that Saatva has expressly denied many of her material allegations and has put up a vigorous defense. In the absence of settlement, it is certain that the expense, duration, and complexity of continued litigation would be considerable. Given the complexity of the issues and the aggregate amount in controversy, the losing party would likely appeal any decision on the merits or class certification. Consequently, the Settlement stands as an extraordinary result.

Approval of the Settlement will allow Plaintiff and the Settlement Class Members to receive meaningful payments now, instead of years from now—or perhaps never. As such, the relief provided to the Settlement Class Members under the Settlement Agreement weighs heavily in favor of approval compared to the risk and delay of a long and drawn-out litigation.

b. *The Settlement provides for an efficient and effective method of distributing relief to the Settlement Class Members.*

The notice and administration process is to be carried out by Simpluris, subject to the Parties' supervision. As described in Section II(C), *supra*, the Parties have developed a robust Notice Plan that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase. This was designed to be the best practicable way of informing the Settlement Class Members.

This process is a fair, efficient, and effective method for distributing relief to the Settlement Class Members given the relatively small damages at issue on a per-person basis. While the amount of damages in the aggregate is substantial, the relatively small value of the Settlement Class Members' individual claims in this case—as in many consumer class cases—makes it

unlikely that individuals would invest the time and expense necessary to seek relief on their own or through individual lawsuits. This factor therefore supports granting preliminary approval.

  *c. The anticipated award of attorneys' fees under the Settlement is fair and reasonable.*

In the Parties' Settlement Agreement, there is no "clear sailing" clause by which the Parties have agreed to a certain fee award. Instead, Plaintiff has agreed under the Settlement Agreement to limit any request for attorney's' fees to no more than one-third (33.33%)[2] of the Refund Proceeds. Ex. A at ¶ 6. Class Counsel intends to request an award of attorneys' fees of one-third (33.33%) of the $ 246,467.16 Class Settlement Amount. This percentage falls well within the range of attorneys' fees awarded in similar settlements. Courts in the Eight Circuit and in Missouri "have frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). Plaintiff will explain in greater detail at the time of final approval why a requested fee award is reasonable given the work Class Counsel has performed and the risk they took on in bringing this case. Class Counsel agreed to bring this case on a contingent basis against a multinational retailer with substantial resources, with the real possibility of an unsuccessful outcome and no fee of any kind. Kopel Decl. ¶ 8.

In sum, both Class Counsel and the Class Representative devoted substantial time and effort to prosecuting the Settlement Class Members' claims in the face of staunch defenses and the risk of failing to obtain any compensation at all. Therefore, the agreed-upon cap on attorneys' fees is fair and more than reasonable considering the relief to the Settlement Class Members. Accordingly, this factor supports granting preliminary approval.

---

[2] Although district courts have discretion to use either the percentage of the fund method or the lodestar method in determining the appropriate amount of attorneys' fees to award, *Keil*, 862 F.3d at 701, the percentage of the fund method is "well-established" and preferred in common fund cases like this one. *In re Xcell Energy*, 363 F. Supp. 2d at 991. As courts, including the Eight Circuit, have routinely recognized, using a percentage of the fund approach most closely aligns the interests of the lawyers with the class, since it promotes efficiency and avoids any incentive to needlessly increase counsel's lodestar. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations).

d. *Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement.*

There are no other agreements to be identified under Rule 23(e)(3).

**4. *The Settlement treats the Settlement Class Members equitably relative to each other.***

This case only involves one Settlement Class, and the Settlement treats each Settlement Class Member identically. The terms of the Settlement apply uniformly across the Settlement Class. Each Settlement Class Member will receive an equal *pro rata* payment from the Class Settlement Fund. Each Settlement Class Member will also be subject to the same deadlines for cashing their settlement checks, objections, and exclusion requests. A neutral third-party, the Settlement Administrator, will be processing all claims. No group or individual is unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting preliminary approval. *Scott v. Boyd Bros. Transp., Inc.*, 2014 WL 12535301, at *3 (W.D Mo. Sept. 5, 2014).

**C. The Court Should Grant Class Certification for Purposes of Settlement**

The second step of the preliminary approval process under Rule 23(e)(1) directs courts to assess whether to certify the class for purposes of judgment on the proposal, which requires that the proposed settlement class satisfy the four prerequisites of Fed. R. Civ. P. 23(a) and at least one of the provisions of Fed. R. Civ. P. 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. Fed. R. Civ. P. 23(a). And where, as here, a plaintiff seeks certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997). Further, Rule 23(b) requires that a settlement's notice

10

be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

### 1. *Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so.*

#### a. *The Settlement Class is sufficiently numerous, and joinder is impracticable.*

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no bright-line test for numerosity, the Eighth Circuit has approved classes far smaller than the Settlement Class here. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving a class of twenty members). Given that the Settlement Class includes thousands of persons, scattered throughout the state, joinder would be impracticable.

#### b. *The Settlement Class Members' claims share common questions of law and fact.*

Commonality, the second requirement under Rule 23(a), is met where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Although there are many common questions of law and fact here, only one such common question is required to satisfy commonality. *Newberg* § 3:20 (5th ed.).

Here, multiple common questions of law and fact exist to satisfy this requirement including: (1) whether Defendant charged and collected an incorrect tax rate on sales of its products through remote sales channels, including Defendant's internet website, to Missouri purchasers that were delivered from an out-of-state facility; (2) whether charging and collecting

incorrect tax on sales of products through remote sales channels, including an internet website, that were delivered from an out-of-state facility constituted an unlawful practice; (3) whether charging and collecting incorrect tax on sales of products through remote sales channels, including an internet website, that were delivered from an out-of-state facility constituted an unfair practice; (4) whether Defendant misrepresented that a higher tax rate was owed on sales of products through remote sales channels, including an internet website, that were delivered from an out-of-state facility; (5) whether Defendant's customers were damaged due to Defendant's unlawful tax practices; (6) whether Defendant should, under Missouri law, be required to return "tax" monies to Plaintiff and the Class; and (7) whether Defendant is liable to Plaintiff and the Class for unjust enrichment. These common questions satisfy the commonality requirement.

### c. *Plaintiff's claims are typical of those of the Settlement Class Members.*

The typicality prong of Rule 23(a) requires that the claims or defenses of Plaintiff be typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Ahmad v. City of St. Louis, Missouri*, No. 4:17-CV-2455, 2019 WL 2009589, at *5 (E.D. Mo. May 7, 2019). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 555 (W.D. Mo. 2017). Courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). "Typicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

Here, Plaintiff's claims are typical of those of the Settlement Class Members based on the same underlying facts and allegedly unlawful conduct. Plaintiff and each of the Settlement Class

Members were subject to the same uniform tax practice by Saatva. Further, there are no defenses unique to Plaintiff that would destroy typicality here. While there may be some minor differences among local use tax rates, none are significant enough to destroy typicality.

d. *Plaintiff and Class Counsel will continue to adequately represent the Settlement Class Members and protect their interests.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between unnamed parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. This is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) . . . the class representatives will vigorously prosecute the interest of the class." *George v. Uponor Corp.*, No. 12–249 (ADM/JJK), 2015 WL 5255280, at \*4 (D. Minn. Sept. 9, 2015).

As described in Section III(B)(1), *supra*, Plaintiff's interests are entirely representative of and consistent with the interests of the proposed Settlement Class, and she has retained qualified attorneys who are experienced in consumer protection litigation. Plaintiff's pursuit and Class Counsel's prosecution of this matter demonstrates that they have been, and will remain, zealous advocates for the Settlement Class Members. Thus, the adequacy requirement is also satisfied.

**2.** ***The Settlement Class is Certifiable Under Rule 23(b)(3) Because Common Questions Predominate Over Individual Questions, and Class Adjudication is Superior to Other Methods of Resolution***

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, both the "predominance" and "superiority" requirements of Rule 23.

First, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

13

During this inquiry, the Eighth Circuit has directed district courts to consider whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566–67 (8th Cir. 2005).

As described in Section III(C)(1)(ii), *supra*, common questions predominate as to the Settlement Class Members' claims. These common questions are central to the Settlement Class Members' claims such that, even if any individual questions were to remain, they would be outweighed in terms of significance. As a result, the predominance element is met. *Id.*

The superiority analysis "requires the Court to determine whether the class action is manageable[.]" *Cope*, 319 F.R.D. at 557. "[T]he argument in favor of class action treatment is most compelling where individual suits would in effect have negative value because litigation costs would outweigh any potential recovery." *Schoenbaum*, 2009 WL 4782082, at *8. Further, when "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" because there will not be a trial. *Amchem*, 521 U.S. at 620. Here, each Settlement Class Member was charged an amount tax in an amount in excess of the correct applicable use tax rate, but the relatively small amount of recovery cause the costs of individual litigation to outweigh any potential recovery.

As such, adjudicating the Settlement Class Members' claims in a single proceeding will save the resources of both the courts and the parties by litigating these issues in an economical fashion under Rule 23. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Therefore, resolving all claims in a single case is in the best interest of the Settlement Class Members and the court system. Piecemeal litigation of the claims at issue here would be an extraordinary waste of judicial time, effort, and expense given the low value of each individual claim and that the same

14

legal theories and evidence will be used by all Settlement Class Members. A class action is the superior method of resolving these claims and the proposed Settlement Class should be certified.

### 3. *The proposed Notice Plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies due process*

Where, as here, a class is to be certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due Process requires that notice contain specific information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). Due Process only requires the notice be the "best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" as well as "describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The proposed notice plan in this case satisfies Due Process. As set forth in section II(C), *supra*, the Settlement Agreement provides for a far-reaching, multi-faceted Direct Notice plan designed to reach each and every of the thousands of estimated Settlement Class Members via email or postcard, and will establish a Settlement Website. The proposed Notice Plan comports with the requirements of Due Process and Rule 23 and warrants approval.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion.

15

Dated: August 11, 2025                         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Yitzchak Kopel*
             Yitzchak Kopel

Yitzchak Kopel (Bar No. 5117619NY)
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

*Counsel for Plaintiff*

16

<u>**CERTIFICATE OF SERVICE**</u>

I, Yitzchak Kopel, hereby certify that on August 11, 2025 a copy of the foregoing

document was filed electronically using the CM/ECF System, which will send notification of

such filing to all counsel of record.

<div style="margin-left:40%">

  */s/ Yitzchak Kopel*    
    Yitzchak Kopel

Yitzchak Kopel (Bar No. 5117619NY)
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

*Counsel for Plaintiff*

</div>

17