**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| GINGER ROBERTSON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>WHITESTONE HOME FURNISHINGS, LLC d/b/a Saatva<br><br>                Defendant. | Case No. 6:23-cv-03184-MDH<br><br>Hon. M. Douglas Harpool |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ASSENTED TO MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.      KEY TERMS OF THE SETTLEMENT ...................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
APPROPRIATE................................................................................................... 3

      A.      General Standards ................................................................................... 3

      B.      Numerosity Is Satisfied........................................................................... 4

      C.      Commonality Is Satisfied........................................................................ 4

      D.      The Class Representative's Claims Are Typical Of The Class ............... 5

      E.      Rule 23(a)(4) And Rule 23(g) Are Satisfied Because Class
Representative And Class Counsel Will Fairly And Adequately
Protect The Class's Interests.................................................................. 5

      F.      The Requirements Of Rule 23(b)(3) Are Satisfied ................................ 6

            1.      Common Issues Predominate...................................................... 6

            2.      Class Settlement Is Superior To Alternate Methods of
Adjudication................................................................................ 7

            3.      The Court Should Appoint Plaintiff As Class
Representative And Bursor & Fisher, P.A. As Class
Counsel Under Rule 23(g) .......................................................... 8

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
UNDER RULE 23(E)(2)...................................................................................... 9

      A.      The Class Representative And Class Counsel Have Adequately
Represented The Class (Rule 23(e)(2)(A)) ............................................ 9

      B.      The Settlement Is Based On Arms' Length Negotiations
Conducted After Extensive Investigation And The Exchange Of
Ample Information (Rule 23(e)(2)(B)).................................................. 10

      C.      The Settlement Provides Adequate Relief To The Class (Rule
23(e)(2)(C))........................................................................................... 11

            1.      The Complexity And Expense Of Continued Litigation
Supports Settlement .................................................................. 11

            2.      The Merits Of The Case Weighed Against The Terms Of
The Settlement Support The Settlement .................................... 12

3.      Defendant's Financial Condition Has Not Been Put Into Question ........................................................................................ 12

D.     The Settlement Falls Well Within The Range Of Approval (Rule 23(e)(2)(C)) ............................................................................................ 13

E.     The Proposed Settlement Treats Class Members Equitably And Utilizes A Fair And Reasonable Allocation Plan That Strongly Supports Approval (Rule 23(e)(2)(D) and Rule 23(e)(2)(C)(ii)) .......................... 14

F.     Class Members Overwhelmingly Support The Settlement..................................... 14

G.     The Settlement's Provision For Attorneys' Fees Is Fair, Reasonable, And Appropriate Under The Circumstances (Fed. R. Civ. P. 23(e)(2)(C)(iii)) ...................................................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)................................................................................. 3, 7

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ............................................................................. 6

*Bachman v. A.G. Edwards, Inc.*,
    344 S.W.3d 260 (E.D. Mo. May 31, 2011).............................................. 10

*Barfield v. Sho-Me Power Elec. Co-op.*,
    2013 WL 3872181 (W.D. Mo. July 25, 2013)......................................... 6

*Carpe v. Aquila, Inc.*,
    224 F.R.D. 454 (W.D. Mo. 2004)............................................................ 6, 7

*Casey v. Coventry Healthcare of Kansas, Inc.*,
    2012 WL 860395 (W.D. Mo. Mar. 13, 2012).......................................... 9

*Clark v. Bally's Park Place, Inc.*,
    298 F.R.D. 188 (D.N.J. 2014).................................................................. 7

*Claxton v. Kum & Go, L.C.*,
    2015 WL 3648776 (W.D. Mo. June 11, 2015) ........................................ passim

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ................................................................... 5, 10

*E.E.O.C. v. McDonnell Douglas Corp.*,
    894 F. Supp. (E.D. Mo. 1995).................................................................. 11

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ................................................................... 12

*In re Aquila ERISA Litig.*,
    237 F.R.D. (W.D. Mo. 2006).................................................................... 5

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) ............................................................. 13

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*,
    2015 WL 7282543 (D.N.H. Nov. 16, 2015) ............................................ 12

*In re McDonnell Douglas Corp. Secs. Litig.*,
    98 F.R.D. (E.D. Mo. 1982) ...................................................................... 7

*In re P.R. Cabotage Antitrust Litig.*,
  269 F.R.D. (D.P.R. 2010) ................................................................. 7

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*,
  631 F.Supp.2d ................................................................. 12, 13, 14

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ............................................................. 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ........................................ 13

*In re Wireless Telephone Federal Cost Recovery Fees Litigation*,
  396 F.3d ................................................................................. 11, 12

*In re Zurn Pex Plumbing*,
  2012 WL 5055810 (D. Minn. Oct. 18, 2012) ........................................... 3

*In re Zurn Pex Plumbing*,
  2013 WL 716088 ....................................................................... 5, 9, 10

*Lane v. Lombardi*,
  2012 WL 5462932 (W.D. Mo. Nov. 8, 2012) ........................................... 6

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................. 14

*Pollard v. Remington Arms Company, LLC*,
  320 F.R.D. 198 (W.D. Mo. Mar. 14, 2017) ............................................. 4

*Simmons v. Enter. Holdings, Inc.*,
  2012 WL 718640 (E.D. Mo. Mar. 6, 2012) ............................................. 3

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...................................................................... 4

*Welsh v. Gardebring*,
  667 F. Supp. 1284 (D. Minn. 1987) ..................................................... 10

**RULES**

Fed. R. Civ. P. 23 ............................................................................. 3

Fed. R. Civ. P. 23(a) ...................................................................... 3, 5

Fed. R. Civ. P.23(a)(1) ....................................................................... 4

Fed. R. Civ. P. 23(a)(2) ................................................................... 4, 5

Fed. R. Civ. P. 23(a)(3) ....................................................................... 5

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 5

Fed. R. Civ. P. 23(b) ....................................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 6, 7

Fed. R. Civ. P. 23(c)(2) ..................................................................................................... 2

Fed. R. Civ. P. 23(e) ......................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................. 9

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................... 11, 13

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 14

Fed. R. Civ. P. 23(e)(3) ..................................................................................................... 9

Fed. R. Civ. P. 23(g) ..................................................................................................... 6, 8

## OTHER AUTHORITIES

Newberg on Class Actions § 13:18 (5th ed.) ................................................................. 3

<u>**INTRODUCTION**</u>

On September 2, 2025, this Court preliminarily approved the class action settlement between Plaintiff Ginger Robertson ("Plaintiff") and Defendant Whitestone Home Furnishings, LLC d/b/a Saatva ("Saatva" or "Defendant") and directed that notice be sent to the Settlement Class (ECF No. 50). The settlement administrator has implemented the Court-approved notice plan and direct notice has reached over **<u>98%</u>** of the certified Settlement Class. The reaction from the class has been overwhelmingly positive. Specifically, of the approximately 6,300 class members, **<u>none</u>** have objected and only **<u>two</u>** have requested to be excluded.[1] The Settlement is an excellent result for the class and the Court should grant final approval. The $246,467.18 Settlement Fund represents the total refund provided by the Missouri Department of Revenue ("MDOR") for the alleged tax overcharges at issue here. And Settlement Class Members will receive payments from the Settlement Fund automatically. Accordingly, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

I.     **KEY TERMS OF THE SETTLEMENT**

A.     **The Settlement Class Definition**

The Proposed Settlement would establish a Settlement Class defined as follows:

> [A]ll consumers who made at least one Qualifying purchase from June 21, 2018 through June 18, 2024 (such period, the "Class Period").

Ex. A at ¶ 1(b). A Qualifying Purchase is defined as follows:

> [A] retail transaction for the purchase of tangible personal property from Defendant for which all of the following are true: (a) the transaction was made via Defendant's website, www.saatva.com; (b) the transaction was completed between June 21, 2018, through June 18, 2024; (c) the purchased property was shipped by or on behalf of Defendant from a location outside the State of Missouri; (d) the purchaser's delivery address was within the State of Missouri; and (e) Defendant charged the purchaser an amount of

---

[1] The deadline for Settlement Class Members to object or request exclusion was November 3, 2025. (ECF No. 50 at 4).

tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction.

*Id.*

**B.      Monetary Relief and the Settlement Fund**

As part of the Settlement, Saatva agreed to establish a Settlement Fund comprised of the Refund Amount of $ 246,467.16, which the MDOR sent to Bursor & Fisher, P.A. in July 2025. Kopel Decl. ¶ 15.  The Refund Amount currently sits in an escrow account.  *Id.*  The entire amount of the Class Settlement Amount will be distributed *pro rata* to Settlement Class Members from the Settlement Fund after deductions for Notice and Administration Expenses and any Court-awarded Attorney's Fees and Litigation Expenses and a Service Award payment to Plaintiff will also be distributed from the Settlement Fund.  Ex. A at ¶ 4(g).

**C.      Notice and Settlement Administration**

Pursuant to this Court's order, Simpluris provided Notice to the Class, handle distribution to Settlement Class Members, and performed other services required by the Settlement Agreement, including responding to Class Members' inquiries.  Pursuant to the Settlement Agreement, Notice was sent by email to all Settlement Class Members for whom a valid email address is available and mailed notice to all email notices which resulted in a "bounce-back." Ex. A ¶ 4.1(b).  The Notice informed Settlement Class Members of their rights, including the right to be excluded from, comment upon and/or object to the Settlement Agreement or any of its terms.  Notice was effectively provided to approximately 98% of the 6,310 Settlement Class Members.  Declaration of Lisa Pavlik ¶¶ 5-13.

**D.      Exclusion and Objection Procedure**

In accordance will Federal Rule 23(c)(2) and Due Process, Settlement Class Members had the opportunity to exclude themselves from the Settlement or object to its approval.  *Id.* at ¶ 17.  The procedures and deadlines for filing opt-out requests and objections were explained on

the Settlement Website and in the Detailed Notice advised Settlement Class Members of their rights. No Settlement Class Members have opted out of the Settlement. Pavlik Decl. ¶ 20.

**E.      Release of Liability**

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and its affiliated entities and other Releasees a full release of all claims arising out of, related to, or connected with the alleged facts, circumstances, and occurrences underlying the claims in this matter, as detailed in Section 5 of the Settlement Agreement, which both the Settlement Website and Detailed Notice explain.

## ARGUMENT

**I.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE**

**A.      General Standards**

The Court may certify a class for settlement purposes. Certifying a class for settlement purposes satisfies the Rule 23 requirements more easily than a contested motion for certification. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997) ("Settlement is relevant to a class certification."); Newberg on Class Actions § 13:18 (5th ed.) ("The obvious implication…is that the standards for certification are laxer at settlement, as that is the only reading that makes sense of the sentence's second clause noting the need for a suitable record."). The practical purpose of certification is to facilitate notice of settlement terms to the class and provide them with the date and time of the final approval hearing. *See id.* at § 21.632; *see also In re Zurn Pex Plumbing*, 2012 WL 5055810, at *5 (D. Minn. Oct. 18, 2012) ("Conditionally certifying a class in connection with preliminary approval allows notice to the class."). The court may certify a class solely for purposes of settlement after making a "determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Simmons v. Enter. Holdings, Inc.*, 2012 WL 718640, at *1 (E.D. Mo. Mar. 6, 2012) (quoting *Manual §*

21.632).  The Eighth Circuit routinely certifies classes for settlement purposes.  *See Pollard v. Remington Arms Company, LLC*, 320 F.R.D. 198 (W.D. Mo. Mar. 14, 2017).

Here, the action focuses on Saatva's common course of conduct in allegedly overcharging the sales tax applied to online orders for Missouri residents.  Any issues regarding damages (which, as a general matter, are not a proper basis for denying certification) are fully resolved by the Settlement—which not only provides adequate collective relief but establishes a fair, equitable, and manageable basis for determining each Class Member's share.  Indeed, in granting preliminary approval this Court already determined that class certification for settlement purposes is warranted.  (*See* ECF No. 50).

### B.    Numerosity Is Satisfied

"To satisfy the numerosity requirement, Plaintiffs must show the class of plaintiffs is so large that joinder of all members would be impracticable."  *Pollard*, 320 F.R.D. at 206 (citing Fed. R. Civ. P.23(a)(1)).  Here, the settlement class consists of approximately 6,300 consumers. Pavlik Decl. ¶ 5.  Because joinder of the thousands of class members would be impracticable the numerosity requirement is easily satisfied.

### C.    Commonality Is Satisfied

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is met where the issues raised have "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

Plaintiff believes this action presents many questions common to the Class, and answering each question will resolve an issue that is central to the validity of each one of the claims in one stroke.  *See, e.g., Claxton v. Kum & Go, L.C.*, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015) ("Here, there are multiple questions of law or fact common to the class—i.e. whether

Defendant misrepresented the gasoline sold; whether the marketing/labeling of the gasoline was false, misleading, deceptive, or unfair; whether Defendant knew or should have known of the contamination prior to the relevant time period; whether the sale of contaminated fuel constituted a breach of an express or implied warranty; etc.").  Plaintiff asserts common questions including: (a) whether Saatva charged and collect incorrect tax rates; (b) whether changing and collecting incorrect tax constituted an unlawful and unfair practice; and (c) whether Saatva is liable for such practices.  *See also* First Amended Complaint ¶ 22.  These common questions, which target the same alleged misconduct by Saatva, satisfy Rule 23(a)(2).

### D. The Class Representative's Claims Are Typical Of The Class

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]'"  *Claxton*, 2015 WL 3648776, at *3 (quoting Fed. R. Civ. P. 23(a)(3)).  "The burden of demonstrating typicality is fairly and easily met so long as other class members have claims similar to the named plaintiff."  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *accord In re Aquila ERISA Litig.*, 237 F.R.D. at 209 (W.D. Mo. 2006).  Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff."  *In re Zurn Pex Plumbing*, 2013 WL 716088 at *3.  Here, Plaintiff asserts the Class Representative pursues the same claims as the Class based on the same legal theories and the same alleged course of conduct: that Plaintiff and Class Members were overcharged on sales tax for online orders.  Typicality is satisfied.

### E. Rule 23(a)(4) And Rule 23(g) Are Satisfied Because Class Representative And Class Counsel Will Fairly And Adequately Protect The Class's Interests

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23 (a)(4).  "The adequacy requirement is met where "1) the representatives and their attorneys are able and willing to

prosecute the action competently and vigorously, and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Barfield v. Sho-Me Power Elec. Co-op.*, 2013 WL 3872181, at *3 (W.D. Mo. July 25, 2013) (quoting *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004)). Adequacy focuses on whether Plaintiffs' attorneys are "qualified, experienced, and generally able to conduct the proposed litigation," and whether Plaintiff has "interests antagonistic to those of the class." *Claxton*, 2015 WL 3648776, at *4 (quoting *Lane v. Lombardi*, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012)).

First, Plaintiff asserts there are no conflicts between the Class Representative and the Class. Throughout the pendency of this action, the Class Representative has adequately and vigorously represented her fellow Class Members. She has spent significant time assisting her counsel, providing information regarding Saatva's sales practices, providing pertinent documents, and assisting in settlement negotiations. Kopel Decl. ¶¶ 27-29.

Second, Class Counsel is highly experienced and well-versed in complex class action litigation. *Id*. ¶ 23. Courts across the country have recognized Bursor & Fisher's experience in complex class litigation and its skilled and effective representation. *Id*. Thus, Class Counsel is "qualified, experienced, and generally able to conduct the proposed litigation." *Claxton*, 2015 WL 3648776, at *4. Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

### F.    The Requirements Of Rule 23(b)(3) Are Satisfied

#### 1.    Common Issues Predominate

Predominance only requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). "The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will

predominate." *Carpe*, 224 F.R.D. at 458; *see also Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 199 (D.N.J. 2014) ("That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other.")

Predominance is met here because the determination of whether Saatva overcharged sales tax to Missouri residents for online orders is the central question common to each and every Class Member's claim. Moreover, the alleged conduct at issue here is common to all Class Members. Because these overriding questions focus on Defendant's conduct—and not on Plaintiff's or class members conduct—and because they concern the core question of liability, they predominate over any individualized questions. *See In re McDonnell Douglas Corp. Secs. Litig.*, 98 F.R.D. at 616 (E.D. Mo. 1982) ("[I]n determining whether common questions predominate, courts focus on the liability issues.") (citing authorities).

### 2. Class Settlement Is Superior To Alternate Methods of Adjudication

The superiority requirement in Rule 23(b)(3) "aims to provide for the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court.'" *In re P.R. Cabotage Antitrust Litig.*, 269 F.R.D. at 140 (D.P.R. 2010) (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and manageability concerns. Fed. R. Civ. P. 23(b)(3). Significantly, the manageability factor weighs strongly in favor of settlement because there is no more manageable form of adjudication than a voluntary settlement with an efficient and equitable extrajudicial claims process. *Cf. Amchem*, 521 U.S. at 620 ("Confronted with a request

for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, class treatment is superior to other methods of adjudication. The maintenance of individual lawsuits by Class Members would be unmanageable, costly, and an inefficient use of judicial resources. A class action here "avoid[s] potential duplicative litigation and … save[s] the parties time and legal costs to adjudicate common legal questions and factual issues," and thus, is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at *5. In addition, there is "desirability…of concentrating the litigation of claims in this forum." *Claxton*, 2015 WL 3648776, at *5.

### 3. The Court Should Appoint Plaintiff As Class Representative And Bursor & Fisher, P.A. As Class Counsel Under Rule 23(g)

The Court should appoint Ms. Robertson as Class Representative. Ms. Robertson has actively developed this case and vigorously represented the interests of the Class. She has provided Counsel with information to help prepare and advance the case, responded to multiple information requests, and represented the Class in settlement discussions. Accordingly, the Court should appoint Ms. Robertson as Class Representative.

The Court should also appoint Bursor & Fisher, P.A. as Class Counsel under Fed. R. Civ. P. 23(g). Bursor & Fisher has substantial experience in successfully prosecuting class actions throughout the country. Kopel Decl. ¶ 23; Ex. B. Both before and throughout this litigation, Class Counsel has conducted a full and thorough investigation of this matter. *Id*. ¶¶ 6-12. Class Counsel has zealously represented the interests of the Class and committed substantial resources to the resolution of the class claims. *Id*. ¶ 25.

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that a district court should approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate considering whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

　　　(i) the costs, risks, and delay of trial and appeal;

　　　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

　　　(iii) the terms of any proposed attorneys' fees, including timing of payment; and

　　　(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equally relative to each other.

Fed. R. Civ. P. 23(e)(2).[2]  "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, 2012 WL 860395 (W.D. Mo. Mar. 13, 2012).  However, "[t]he policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013).  This Court should grant final approval and find the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).

### A.    The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))

As set forth above, Class Counsel and the Class Representative have adequately and vigorously represented the Class.  *See supra* § I.E.  Bursor & Fisher has extensive experience

---

[2] There are no separate agreements to be identified pursuant to Rule 23(e)(3).  Kopel Decl. ¶ 26.

litigating and settling class actions. *See* Kopel Decl. Ex. B. (Firm Resume). "The views of the parties to the settlement must also be considered" as well as judgements of experienced class counsel. *DeBoer*, 64 F.3d at 1178. Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsh v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)) (citations omitted). Courts in the Eighth Circuit routinely find that the adequacy of representation requirement is satisfied where the interests of the class representative is not antagonistic to the interests of the class. *See In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013) ("Since there is no indication that the class representatives' interest was antagonistic to the objectors interests, we agree with the district court that the representatives are adequate.") (internal quotations omitted); *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 268 (E.D. Mo. May 31, 2011) (same).

**B. The Settlement Is Based On Arms' Length Negotiations Conducted After Extensive Investigation And The Exchange Of Ample Information (Rule 23(e)(2)(B))**

The Parties engaged in a full day of private mediation with the Honorable Frank Maas (Ret.), an experienced and renowned mediator to assist them in reaching the proposed Settlement. Following this mediation session, the Parties finalized the settlement through several weeks of additional negotiations and other extensive communications. Kopel Decl. ¶ 10. Where, as here, the Settlement is the product of a mediation with an experienced mediator, there is a presumption of fairness and arms' length negotiations. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge presided over the settlement negotiations and that the district court had prior experience with this type of litigation. Such multiple layers of scrutiny further mitigate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton*, 2015 WL 3648776, at *6 (approving settlement as "a

product of extensive negotiation conducted over a period of several months and requiring the services of a mediator.").

Additionally, the Parties have engaged in sufficient investigation and discovery "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. at 1334 (E.D. Mo. 1995). Indeed, the Parties exhaustively investigated the facts underlying Plaintiff's allegations before and during this litigation. Kopel Decl. ¶¶ 6-12. The Parties exchanged further information through written correspondence, phone calls, detailed mediation statements and exhibits submitted by the Parties, and a full-day mediation.

### C. The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C))

#### 1. The Complexity And Expense Of Continued Litigation Supports Settlement

The complexity, expense, and likely duration of this case clearly favors approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (at final approval, courts should take into account "the costs, risks, and delay of trial and appeal"). Discovery in this case would likely be protracted, expensive, and burdensome. The vast number of witnesses, reporting parties, and tax authorities to have knowledge of the events giving rise to this litigation would require the Parties to take and defend dozens of depositions and collect and review documents from dozens of custodians. The Parties would also be required to incur significant expert costs. The scope of discovery would likely drive this litigation to continue for several years while multiplying the costs for all Parties. *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d at 933 ("Indeed, this case had yet to complete discovery, much less the inevitable appeals that would have been necessary before a final resolution. The district court properly explained that, barring settlement, this case would likely drag on for years, require the expenditure of millions of dollars, all the while class

members would receive nothing.") (internal quotations omitted); *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*, 631 F.Supp.2d at 1158 (finding third factor met where "[t]here would unquestionably be cross-motions for summary judgment, motions to exclude expert testimony, and other motions in limine, all leading to a lengthy trial, post-trial motions, and eventual appeal."). The complexity and expense of continued litigation weigh in favor of the settlement.

### 2.     The Merits Of The Case Weighed Against The Terms Of The Settlement Support The Settlement

In the Eighth Circuit settlements are encouraged when "the outcome of the litigation would be far from certain." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d at 933. Absent settlement, the parties could likely resolve these ongoing disputes only through additional motion practice, discovery, and, potentially, trial." *In re Colgate-Palmolive Softsoap AntibacterialHand Soap Mktg. & Sales Practices Litig.*, 2015 WL 7282543, at *11 (D.N.H. Nov. 16, 2015). Plaintiff faces considerable risks in establishing class-wide liability and in obtaining certification of the proposed class action. The Parties would have to litigate class certification (and likely decertification) motions, as well as dispositive motions. These facts strongly support final approval of the Settlement. *See Grunin v. International House of Pancakes*, 513 F.2d 114, 125 (8th Cir. 1975).

### 3.     Defendant's Financial Condition Has Not Been Put Into Question

Another factor considered by the Eighth Circuit is whether Defendant's "financial condition would prevent it from raising the settlement amount." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d at 933. Saatva's financial condition nor its ability to fund the settlement amount has been called into question. Therefore, this factor weighs in favor of settlement. *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396

F.3d at 933 ("As to the second factor, there is no indication that [defendant's] financial condition would prevent it from raising the settlement amount."); *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*, 631 F.Supp.2d at 1157 (finding second factor met where "defendants can meet their settlement obligations.").

### D. The Settlement Falls Well Within The Range Of Approval (Rule 23(e)(2)(C))

Another consideration at the final approval stage is whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). The Settlement "brings real and immediate benefits to the settlement class while they may well not get anything if the case were to go forward or, if they did receive some benefits, may well not receive anything until years into the future after millions of dollars have been spent." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at *10-11 (W.D. Mo. Apr. 20, 2004). "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *Id.* (citing *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (recognizing it is often "proper to take the bird in the hand instead of a prospective flock in the bush.")).

The Settlement provides for substantial monetary relief to Class Members. *See supra* § I.B (detailing the benefits provided by the Settlement). In the absence of settlement, the complexity of this case and the novel legal theories make continued litigation an inherently risky, costly, and timely undertaking. Because the proposed Settlement was negotiated at arms' length by experienced counsel, is neither illegal nor collusive nor obviously deficient, and falls within the range of possible final approval, and is overwhelmingly supported by the Class, it should be approved.

**E.** **The Proposed Settlement Treats Class Members Equitably And Utilizes A Fair And Reasonable Allocation Plan That Strongly Supports Approval (Rule 23(e)(2)(D) and Rule 23(e)(2)(C)(ii))**

The proposed allocation and method of distribution relief treats Class Members equitably relative to each other and does not impermissibly favor some members over others. *See* Fed. R. Civ. P. 23(e)(2)(D). The plan distributes compensation to class members in a *pro rata* manner with payments that will be proportionate to the out-of-pocket expenditures of each Class Member. *See supra* § I.B. And Class Members are not required to submit a claim to receive payment. *See id.* This factor for final approval is therefore satisfied as well.

**F.** **Class Members Overwhelmingly Support The Settlement**

Final approval is warranted where, as here, "the overwhelming majority of [class members]…have offered no objection." *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*, 631 F.Supp.2d at 1158. Here, the Class Members have overwhelmingly affirmed the Court's judgment at preliminary approval that the Settlement is fair, reasonable, and adequate. Direct notice was delivered to over 98% of the Class Members and **zero** have objected to the settlement and only **two** class member has requested to be excluded. Pavlik Decl. ¶¶ 18-20. The lack of objections supports a finding that the Settlement is fair, reasonable, and adequate, and should be approved. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (finding fourth factor met where "fewer than 4 percent of the class members objected to the settlement, significantly fewer than the number of objectors to other settlements that have been approved.").

**G.** **The Settlement's Provision For Attorneys' Fees Is Fair, Reasonable, And Appropriate Under The Circumstances (Fed. R. Civ. P. 23(e)(2)(C)(iii))**

Finally, "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), do not undermine the adequacy of the relief provided to the Class. Significantly,

to date, no class member has objected to Plaintiffs' attorneys' fee request. Pavlik Decl. ¶ 20. As discussed in Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, And Incentive Award, Plaintiff's request for attorneys' fees is fair, reasonable, and appropriate under the circumstances.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated: December 9, 2025                     Respectfully submitted,

_/s/ Yitzchak Kopel_
Yitzchak Kopel

**BURSOR & FISHER, P.A**

Yitzchak Kopel (Bar No. 5117619NY)
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Yitzchak Kopel, hereby certify that on December 9, 2025 a copy of the foregoing

document was filed electronically using the CM/ECF System, which will send notification of

such filing to all counsel of record.

       */s/ Yitzchak Kopel*
         Yitzchak Kopel

**BURSOR & FISHER, P.A**

Yitzchak Kopel (Bar No. 5117619NY)
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

*Counsel for Plaintiff*

16